H. W. WILSON and EARL W. YOUNGMEYER, Administrator of the Estate of J. H. PORTER, Appellants, v. JOE R. HOOVER.—119 S. W. (2d) 768.

Division One, September 17, 1938.

*Ira B. Burns, L. J. Bond* and *Burns & Woods* for appellants.

*Watson, Ess, Groner, Barnett & Whittaker* for respondent.

BRADLEY, C.—This cause has been reassigned. Prior to January 1, 1933, J. H. Porter, George P. Robinson, and defendant, Joe R. Hoover, were engaged as copartners in buying, pasturing and selling cattle. The firm name was Porter-Robinson-Hoover Company. About January 1, 1933, by mutual consent, the partnership was dissolved. After the dissolution and before the filing of this cause, Robinson died. Thereafter, Porter commenced this cause against Hoover for an accounting. Porter was adjudged *non compos,* and his guardians were substituted as plaintiffs and filed an amended petition. A demurrer to the amended petition was sustained and the guardians appealed. We infer that the demurrer was sustained on the theory that the circuit court did not have jurisdiction. Pending the appeal, Porter died and the cause was revived here in the name of the administrators of the estate of Porter.

The amended petition (omitting formal parts) alleges: That Porter, Robinson and Hoover were partners, engaged in the business above stated, and were operating under the firm name as stated; that prior to 1930, and during 1930, 1931, and 1932, the partnership business was carried on; that at the beginning of 1932, the partners "struck a balance as to the copartnership accounts for all previous years;" that all the arrangements and agreements between the partners concerning the copartnership were oral, except that on February 26, 1932, a written memorandum was executed. This memorandum is set out in the petition and recites:

"It is agreed and understood that the division in this partnership be as follows: J. H. Porter retaining one-half (½) interest, George P. Robinson one-fourth (¼) interest, and Joe R. Hoover one-fourth (¼) interest in all cattle handled by the above firm for period of one year from this date. Any and all losses that may occur during this period shall be shared as each of the partner's interest appears herein; but all profits accruing shall go to the said J. H. Porter as reimbursement to him for losses occurring in the year 1930 and 1931."

Following the memorandum it is alleged that by the partnership agreement the partners were to contribute, in the proportion of their respective interests, to the indebtedness, expenses, and losses that might be incurred "in the event that the proceeds from the operations of said copartnership did not equal its operating expenses."

It is further alleged that the books and records of the copartnership were kept at Kansas City, Missouri, by Hoover; that the partnership "operated over a period of years down to and including the year 1932, and that (at) the beginning of 1933, by mutual consent of all the partners, the said firm was dissolved, all of its assets sold and disposed of, and all liabilities of the copartnership to persons other than the members thereof were fully paid and discharged, and the business of the copartnership discontinued."

It is further alleged "that during the existence of said copartnership, and at all times herein mentioned, the said J. H. Porter financed the said copartnership venture, furnished to it the necessary capital with which to carry on its operations; that at various times during the existence of said copartnership and at all times mentioned therein, and more particularly during the years 1930, 1931, and 1932, said copartnership venture operated at a loss and its expenses of operations far exceeded its gross receipts; that upon the dissolution of said copartnership it was agreed by the defendant and the said Robinson that they would account for and pay over to the said J. H. Porter their respective proportionate part of any and all monies due and owing the said J. H. Porter, which said J. H. Porter had advanced as well as any and all monies which were due and owing to the said J. H. Porter for pasture rental under and by virtue of the terms of

said copartnership agreement; that all the assets of said copartnership had been disposed of and that said copartnership has no outstanding indebtedness; that during the time said copartnership was conducted at a loss, all said losses were paid by the said J. H. Porter personally from his own personal funds and assets; that by reason of the losses and the payment thereof by the said J. H. Porter for his proportionate part of the said losses under the terms of the said copartnership agreement hereinbefore mentioned, the exact amount of which this plaintiff is unable to allege, but it is more than $30,000.''

Plaintiffs allege ''that after the dissolution of said copartnership and prior to the death of the said George P. Robinson, the said George P. Robinson again made a settlement and accounting with said J. H. Porter for his share and proportion of the losses of said copartnership and completely settled up partnership affairs between said J. H. Porter and said Robinson, and in settlement thereof executed to said J. H. Porter his promissory note in the sum of $38,550.20, which has been duly presented and allowed in the probate court of Jackson County, Missouri, as a claim against the estate of said Robinson, as payment in full for the monies due and owing from said Robinson by reason of, and growing out of, said copartnership venture.''

It is further alleged: ''Plaintiffs say that more than one year has elapsed since the appointment of the administrator and publication of notice thereof in the estate of George P. Robinson and that this defendant has never filed any claim in said estate on account of said copartnership.

''Plaintiffs further say that they are informed and believe that there was not at the time of the death of George P. Robinson any indebtedness existing between the defendant and said George P. Robinson on account of said copartnership affairs; that the sole indebtedness remaining unadjusted at this time is the indebtedness between the said J. H. Porter and this defendant arising out of said copartnership.

''Plaintiffs allege and say that although they have demanded of the defendant that he account for and pay over to the estate of said J. H. Porter his proportionate share of his indebtedness of said copartnership which the said J. H. Porter paid, and to render an accounting with them that said defendant has neglected and refused, and still neglects and refuses to account for and pay over same to the estate of said J. H. Porter; that said J. H. Porter did at all times account to the defendant in regard to the partnership affairs, and these plaintiffs are now, at all times, able and willing to so account; that the said estate of J. H. Porter is willing to do equity and has no adequate remedy at law, and unless there be an accounting between these plaintiffs and defendant, the estate of said J. H. Porter, will suffer irreparable injury and damage.''

. The prayer follows: "Wherefore, plaintiffs pray that there be an accounting of the partnership affairs between said J. H. Porter and defendant, and that the defendant herein be required to account for and pay over to these plaintiffs all moneys which may be found due and owing by the defendant to the estate of J. H. Porter, and that the court herein render judgment for this estate of J. H. Porter for the sum of money which may be found by the court to be due and owing to this estate of J. H. Porter by the defendant herein, growing out of the operation of the said copartnership, and for such other and further judgments and decrees as to the court may seem just and proper in the premises."

The demurrer follows: "Comes now the defendant, Joe R. Hoover and demurs to the amended petition of the plaintiffs filed herein upon the grounds and for the following reasons, to-wit:

"1. That this court has no jurisdiction of or over the subject matter of this action;

"2. That there is a defect of parties defendant in that the personal representative of George P. Robinson, deceased, who, it is alleged in said amended petition, was one of the copartners in said alleged partnership, of the affairs of which an accounting is sought in this action, is not joined in this acton nor before the court and is a necessary and indispensable party to the accounting of the affairs of said alleged partnership;

"3. That plaintiffs' alleged cause of action and claims are barred by limitations;

"4. That said amended petition does not state facts sufficient to constitute a cause of action against this defendant nor to entitle the plaintiffs to any relief against this defendant."

Measured by the demurrer the material facts are: (1) The partnership was dissolved by consent in January, 1933; (2) all the assets of the firm were sold, and all partnership debts (except as to the partners) were paid; (3) Hoover and Robinson, after the dissolution, agreed separately with Porter, that each would account for and pay to Porter whatever sum each was due to pay; (4) Robinson did so account, and in payment of what he owed Porter, gave his note to Porter for $38,550.20; (5) thereafter Robinson died and an administrator of Robinson's estate was appointed by the probate court of Jackson County, Mo.; (6) in due time Porter filed his claim (based on the note) against the Robinson estate and the claim was allowed; (7) Hoover filed no claim against the Robinson estate, and before the filing of the present cause the time for filing claims against the Robinson estate had expired; (8) at the time of the death of Robinson, there was no partnership claim one way or the other between Hoover and Robinson; and (9) "the sole indebtedness remaining unadjusted" was the accounting between Porter and Hoover.

In Pryor v. Kopp, Admr., 342 Mo. 887, 119 S. W. (2d) 228, the facts were: From December 1, 1925, to (about) November 1, 1930, Pryor and Thomson were equal partners under an oral agreement, and were engaged in constructing roads, etc. The partnership was dissolved by mutual consent about November 1, 1930, but there was no accounting between the partners. Thomson died April 6, 1932, and on April 12th, Kopp was appointed administrator of Thomson's estate. August 20, 1932, Pryor filed suit (in two counts) against Kopp, as administrator, for an accounting and to partition personal property belonging to the partnership. The issues on the partition count were found in favor of Kopp, administrator, and Pryor did not appeal. On the accounting wing of the case Pryor alleged that Thomson, during the existence of the partnership, received large sums of money, the profits of the partnership, and greatly in excess of his (Thomson's) share, and that upon an accounting it would be made to appear that Thomson's estate was indebted to Pryor in a large sum of money. Among other defenses, the existence of the partnership was denied. A jury trial was had on the issue of the existence of the partnership, and on this issue the jury found that the partnership existed as alleged. Thereupon the court entered an interlocutory decree as to the existence of the partnership and ordered an accounting. A referee was appointed to take the accounting. The referee heard the evidence and on his report the court entered judgment in favor of Pryor in the sum of $123,768.27 as his "part and share of the profits of the partnership," and ordered that, upon the filing of a certified copy of the judgment in the office of the clerk of the probate court administering Thomson's estate, the same be allowed and classified as a demand against the estate.

It was contended in the Pryor case that the circuit court did not have jurisdiction of the subject matter; that jurisdiction was exclusively in the probate court. In that case it is stated that the point on jurisdiction was based upon the proposition that Pryor was "seeking a complete administration of the partnership estate in the circuit court." Considering the point on jurisdiction the court said: "If the partnership relation were admitted, then we would be dealing with quite another question. The existence of that relationship is one of the vital issues, because plaintiff's right to recover at all is wholly dependent thereon. *Another distinguishing characteristic of this suit is that the rights of creditors are in nowise involved.* The allegation of the petition is that only as between themselves, the partners, has there been no accounting, and the proof so shows. The suit is one to establish the fact of the existence of the former partnership relation, and, by an accounting, to determine the amount of the profits thereof, which are alleged to be in the possession of the administrator of the individual estate of the deceased partner (title

to which the latter claims, not as firm assets, but as assets of the individual estate of his decedent), and to obtain a money judgment against said estate for plaintiff's proportionate share of said profits. Under these circumstances, may this suit be maintained, or must plaintiff be remitted to the probate court, there to administer as the surviving partner under the statute?" (Italics ours.)

It was held in the Pryor case that the circuit court did have jurisdiction, and the judgment was affirmed. The fact that the existence of the partnership was denied in the Pryor case was of importance in ruling the point on jurisdiction, but it will be observed that the court pointed out that "another distinguishing characteristic" of the suit was that the rights of creditors were in no wise involved, and that "only as between" the partners there had been "no accounting."

In the present case, as admitted by the demurrer, creditors are in no wise involved, the estate of Robinson is in no wise involved; all the partnership property was disposed of; and the only matter undisposed of, when the cause was filed, was the accounting between Porter and Hoover.

Under the facts admitted by the demurrer, what could Hoover have accomplished, had he sought administration of the partnership estate in the probate court? What was there to administer? Defendant asserts in his brief that the partnership was dissolved by the death of Robinson. The petition alleges and the demurrer admits that the partnership was dissolved "by mutual consent" at "the beginning of 1933." It is true generally, that even though a partnership is dissolved by agreement or by death, there is still a kind of continued existence until all of its debts are paid "and all its assets collected and distributed in accordance with the agreement." [Hargadine et al. v. Gibbons, 114 Mo. 561, 1. c. 565, 21 S. W. 726.] The *asset* involved in the case cited was a partnership judgment against a third party and obtained while all the partners were living and the suit was on that judgment, and was prosecuted in the name of the surviving partners after the death of two members of the partnership. The defendant contended that the plaintiffs, as the surviving partners, could not alone maintain the suit; that the executors of the estates of the deceased partners were necessary parties. But it was held that the surviving partners could maintain the suit.

The subject of jurisdiction, and on somewhat similar facts to those of the present case, was considered at length in the Pryor case, supra, and most of the cases on the point were cited and discussed. Any discussion here would of necessity be mere repetition.

We are quite clear that, under the facts as stated in the petition, the circuit court had jurisdiction to determine the controversy between Porter and Hoover, but the question arises as to whether the petition states a cause of action for an accounting. It has been said that the necessity for a discovery was originally the

foundation for equity jurisdiction in an action for an accounting, but such jurisdiction "is no longer restricted to cases of that description, and the best considered authorities put the equitable jurisdiction upon three grounds, to-wit: The need of a discovery, the complicated character of the accounts, and the existence of a fiduciary or trust relation." [1 C. J., sec. 56, p. 613; Dahlberg v. Fisse, 328 Mo. 213, 40 S. W. (2d) 606, l. c. 609. See, also, 1 C. J. S., sec. 15, p. 648; 1 Am. Jur., sec. 52, p. 298; Strong v. Crancer et al., 335 Mo. 1209, 76 S. W. (2d) 383, l. c. 387.]

It is alleged, as appears, supra, that "Porter financed the said copartnership venture, furnished to it the necessary capital with which to carry on its operations; that at various times during the existence of said copartnership and at all times mentioned therein, and more particularly during the years 1930, 1931, and 1932, said copartnership venture operated at a loss." And it is alleged "that upon dissolution . . . it was agreed" that Robinson and Hoover "would account for and pay" to Porter "their respective proportionate part of any and all monies due" Porter, that is, money Porter "had advanced," etc. The cause of action, under the facts alleged, is to recover from Hoover his proportionate part of capital furnished by Porter, and his proportionate part of partnership debts paid by Porter. There is no allegation as to need of a discovery or as to complicated accounts, and since all the partnership property had been disposed of and all partnership debts paid, and dissolution had, there could not have remained any fiduciary or trust relation. The only thing remaining, according to the petition, was the determination of Porter's claim of contribution against Hoover for his (Hoover's) proportionate part of capital furnished and debts paid by Porter. If there are no firm assets to reimburse a partner who has paid more than his share of obligations, he may recover from his copartner, or each of his copartners, the proportionate part which each should have paid. [2 Rowley's Mod. Law of Partnership (2d Ed.), p. 902; Lyons v. Murray, 95 Mo. 23, 8 S. W. 170, 6 Am. St. Rep. 17; Goff v. Bergerman, 97 Colo. 363, 50 Pac. (2d) 59.]

It is alleged that at the beginning of 1932, the partners "struck a balance as to the copartnership accounts for all previous years." The inference from the allegation is that the partners then determined the situation of each as to the other. The partnership continued only for about a year after they "struck a balance," and after dissolution, Porter and Robinson were able to determine the contribution of Robinson. But when he (Porter) comes to sue Hoover for his contribution, he does not allege any specific amount due him, but seeks the equity side of the court to determine this. Porter and Robinson must have arrived at Robinson's contribution from the books and records of the partnership, and the same should be true as to Porter and Hoover, and this action, so far as appears from the petition, is on

the law side of the court and not the equity side. [3] Every accounting case is not necessarily for a court of equity. "Matters of account, originally cognizable only at law, are now within the jurisdiction of equity, but only when some special ground of equity jurisdiction exists, such as fiduciary relations, mutual or complicated accounts, fraud, or the need of discovery." [1 C. J. S., sec. 14, p. 645.] And of necessity in close cases, the trial court must exercise a discretion as to whether facts presented place a case, involving accounts, on the equity or law side of the court.

The judgment sustaining the demurrer to the petition should be reversed and the cause remanded, and if plaintiffs desire to amend the petition to sue at law for a sum certain for contribution such may be done, or if plaintiffs have a cause for an equitable accounting and desire to amend the petition to so state, they may do so. And if plaintiffs do not desire to amend, then the court will dismiss the cause. [See Mann v. Bank of Greenfield, 323 Mo. 1000, 20 S. W. (2d) 502.] It is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bradley, C., is adopted as the opinion of the court. All the judges concur, except *Lucas, J.,* not sitting.